IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT MILLEDGEVILLE,

## MAY TERM, 1851.

Present—JOSEPH H. LUMPKIN, ⎫
HIRAM WARNER, ⎬ Judges.
EUGENIUS A. NISBET, ⎭

No. 97.—JOHN W. CARTER and Wife, plaintiffs in error, vs. GEORGE F. BUCHANAN, defendant.*

[1.] Hearsay evidence, admissible to prove birth and pedigree, but incompetent to create or destroy title to property.

[2.] Where a family of slaves is held by a common title, adverse possession as to one is good as to all.

[3.] Whether a father permit property to go home with his daughter, immediately upon her marriage or at any subsequent period, if he suffer it to remain there for a number of years, the presumption of law is that he intended it as a gift.

[4.] Where the law has been fully and fairly submitted to the Jury by the Judge, in his summing up in conclusion, and the Court is satisfied that the verdict is in accordance both with the law and justice of the case, a new trial will not be awarded on account of some inaccuracy of language as to the rights of the parties, which may have been used by the Judge during the progress of the trial.

*See former decision upon this case, in 2 *Kelly*, 337.—[REP.]

Trover, in Wilkes Superior Court.   Tried before Judge BAX-
TER, September Term, 1850.

The errors assigned in this case arose upon the trial of an ac-
tion of trover for a slave named Jerry.   Carter and wife claimed
under an alleged parol gift of Jenny, the mother of Jerry, to
Esther Caroline Carter, (formerly Kendrick,) when an infant, by
her grandfather, Jacob Bull.   Jenny and her offspring had been
in the possession of Jones Kendrick, the father of Mrs. Carter,
from the time of the alleged gift in 1814, until his death, thirty-
five years thereafter.   The plaintiffs were married in 1830.   This
suit was commenced in 1846.   The defendant claimed under a
purchase at the sale by the executors of Jones Kendrick.

On the trial, the plaintiffs proposed to prove by T. F. Ken-
drick, that "Jenny was always recognized in the family of said
Jones as the property of said Esther Caroline."   The Court re-
jected the evidence, and this is the first error assigned.

Plaintiffs objected to the testimony of the same witness, to the
following effect, viz : "Said Jones Kendrick did give Charles
Simpson, one of the descendants of Jenny, Rachel by name,
shortly after Simpson's marriage with said Jones' daughter,
which fact was known to both Carter and wife.   This was fifteen
years ago."   The Court overruled the objection, and this is as-
signed as error.

Plaintiffs' counsel requested the Court to charge, among other·
things, "That the gift of one or more of Jenny's children to
Simpson, did not cause the Statute of Limitations to commence
running in favor of Jones Kendrick as to Jenny and her chil-
dren not given."   The Court refused so to charge, but on the
contrary charged, "That the giving away, of one of Jenny's
children, was notice to Carter and wife, (when brought home to
them,) of adverse possession as to the whole of them, and that
if Carter and wife knew of the gift, four years before the com-
mencement of the suit, they are barred by the Statute of Limi-
tations."   Which charge and refusal to charge are assigned as
.error.

Plaintiffs' counsel requested the Court to charge, " That the

negro Jenny, going home with Kendrick ten or twelve years after his marriage with the daughter of Jacob Bull, was at too late a day to make it a gift to him."

The Court declined so to charge, but charged, "That if a father-in-law sent home a slave with a son-in-law twelve years after the marriage, it was as high evidence of a gift as if sent home immediately after the marriage." Which charge and refusal to charge are assigned as error.

In the course of his charge, the Court charged the Jury, "That the delivery of property by a father-in-law to a son-in-law at any time, is presumptive evidence of a gift, especially as to third persons." Also, that "When one person is in possession of property for another, the possession does not become adverse until he sets up title in himself, and gives notice of such claim, or exercises acts of ownership inconsistent with the other's title—such as giving them away or selling them—and the plaintiffs had knowledge, by positive evidence, of such adverse possession."

ANDREWS & GARTRELL, represented by COBB, for plaintiffs in error.

R. TOOMBS and A. H. STEPHENS, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The first error complained of is, the refusal by the Circuit Court to permit evidence to be introduced on the trial, that Jenny, the mother of Jerry, the boy in dispute, was always *recognized* in the family of Jones Kendrick, under whom the defendant claims, as the property of Mrs. Carter, one of the plaintiffs.

Hearsay and reputation are competent to establish certain facts, such as birth and pedigree, but are inadmissible, we apprehend, to create or destroy title. To make this legal testimony against Kendrick, it should have been at least shown that he was privy to these family reports. No attempt was made to charge him with knowledge of these rumors.

[2.] The next error assigned is, in allowing a witness to prove that fifteen years before this suit was brought, Jones Kendrick, with the knowledge of his daughter and her husband, had given away Rachel, one of the descendants of Jenny, to Simpson, his son-in-law. We see no objection to this evidence. It was a tacit acknowledgment on the part of the plaintiffs, that Kendrick had the right to dispose of this family of slaves.

[3.] The Court was requested to charge, that the gift of one or more of Jenny's children to Simpson, did not cause the Statute of Limitations to commence running in favor of Jones Kendrick, to Jenny and her children not given. The presiding Judge refused to give this charge, and on the contrary instructed the Jury, that the giving away of one of Jenny's children, was notice to Carter and wife, when brought home to them, of adverse possession as to the *whole;* and that if the plaintiffs knew of the gift, four years or more before the action was instituted, they were barred by the Statute of Limitations; which refusal and charge are assigned as error.

We are inclined to think, that the charge was not strictly legal, either as asked or given. It was clearly wrong to insist that the gift of one of the slaves held by a common title, was *no evidence* of adverse possession, as to the *residue;* and, on the other hand, it was not perhaps entirely right to rule that it constituted *an absolute bar.* It was a circumstance which, uncontradicted or explained, would authorize a finding against the plaintiffs.

Plaintiffs' counsel requested the Court to charge, that Jenny going home with Kendrick, ten or twelve years after his marriage with the daughter of Jacob Bull, was at too late a day to raise the presumption of a gift; which charge the Court refused to give, and, on the contrary, instructed the Jury, that if a father-in-law sent home a slave with a son-in-law, *twelve years* after the marriage, it was as high evidence of a gift as if delivered immediately after the marriage; and this charge and refusal are made the fourth ground of error.

Ordinarily I should say, that the going home of property immediately after marriage, was higher evidence of an intention to give, than when sent at a later period. This, however, is rather

matter of *opinion* than of *law*. And to this proposition there must be, in the nature of the case, many exceptions; as for instance, suppose the match was disapproved and repudiated at the time by the parent, and subsequently, after the lapse of many years, if you please, a reconciliation should take place, and immediately consequent thereon, property was sent home with the daughter—this would be as high evidence of the *quo animo* as if the facts had transpired directly after marriage.

[4.] Conceding, then, that some of the language employed by the learned Judge, during the progress of the trial, was not sufficiently guarded, both as to the *degree* of presumption, arising from the delivery of property to a son-in-law immediately after the marriage, and at a subsequent period, and, also, as it respects the Statute of Limitations, still, by reference to the record, it will be seen that in summing up to the Jury in conclusion, he presented the whole law of the case *fairly*, not to say *favorably*, for the plaintiffs; and being satisfied that the concurrent verdicts which have been rendered for the defendant, are in accordance with the manifest justice as well as the law of the case, we cannot get our consent to reverse the judgment.