EDWIN T. GRAY, plaintiff in error, *vs.* GEORGE S. OBEAR, executor, defendant in error.

1. That to maintain the trust in this case, it is necessary that the *cestui que trust* should not have been of sound mind when the will took effect, is *res adjudicata*.

2. Under the Code there are various degrees of unsoundness of mind, one of which is incapacity to manage the ordinary business of an ordinary person in the affairs of life. This degree, from whatever cause occurring, will uphold the creation and the continuance of a trust.

3. The reasons of witnesses for their opinions on the question of mental soundness, are not for the consideration of the court, but for the jury only.

4. The declarations of a testator at the time of making a will, in which he gives to a trustee property in trust for his son, are not admissible to establish the son's insanity or unsoundness of mind.

5. Where the question is as to the value of certain bonds at the time they were received from the testator, the person chargeable with them, though a party to the cause, is competent to testify as to the value, and an actual sale of them in the market may be considered. And to rebut a charge of secreting the bonds or their proceeds, a book kept, and exhibited to the family, showing a sale, and the amount thereof, may be admitted.

6. Acts and conduct of the *cestui que trust*, from boyhood to the time of trial, were admissible to illustrate his capacity.

Trusts. Minors. Insanity. Witness. Wills. Evidence. Before Judge HILL. Bibb Superior Court. October Adjourned Term, 1876.

Gray filed his bill against Obear as executor of William Gray, deceased, in which he alleged that said deceased, his

father, died in 1870, leaving a will, in which he bequeathed
to said defendant, as trustee for complainant, one-fourth of
his estate, real and personal; that said trust was an executed
trust, he being of age and *sui juris*. He therefore prayed
that said defendant might account to him for his interest in
said estate; also, that said Obear might be relieved from
said trust on account of mismanagement and fraudulent
conduct, and a new trustee appointed.

The defendant answered that complainant was *non compos mentis* at the time of the execution of said will, and is
still; that the trust was valid, and that he had not committed any waste, mismanagement, etc.

See this same case as reported in 54 *Ga. Rep.*, 231, and
55 *Ib.*, 138.

The evidence introduced was voluminous. The eccentricities and peculiarities of complainant from his infancy to
the time of trial, were shown. The opinions of numerous
witnesses were introduced as to his mental condition, varying from the belief that he was entirely imbecile, to confidence in his general ability to manage property. The preponderance of opinion indicated that he was of weak mind,
but whether he was so entirely imbecile as not to be able to
manage property, and in what this imbecility consisted, was
left in some doubt.

The court permitted defendant to prove by one William
Holmes, that testator told him that some person in Texas
had induced complainant to commit some criminal act, such
as cattle stealing, or the like; that he was a poor, miserable
boy, whom anybody could lead into trouble. To which
complainant excepted.

The court permitted George S. Obear, the defendant, to
testify in reference to the obligation given by him to testator for stocks and bonds, to the amount of $5,700, that he
sold them in November, 1868, for $5,000; that since then
the price has been lower, at least 25 per cent. To which
complainant excepted.

The court permitted the introduction of the following

entry from the private book of the defendant, in which he testified that he kept his returns as executor and trustee, and which had been exhibited to the family of the testator :

"Oct. 1, 1870. George S. Obear is due to the estate of William Gray, $5,000, advanced him by William Gray, and to be deducted in this way : $3,750, three-fourths of the same from his share on the final distribution of the estate, $1,250 to be paid to each of the other heirs without interest." To which complainant excepted.

The court permitted Mrs. M. E. Ellis to testify as follows :

"When Edwin's father made his will, he told me that he had done so and how he had made it, and I know the reasons why he made it so, so far as it relates to Edwin Gray. His father told me that he knew, that Edwin was not capable of taking care of his own affairs, and therefore he made his will as he did." Similar declarations and sayings of the testator to other witnesses were also shown. To all of which complainant excepted.

The jury returned the following verdict :

"1. We, the jury, find that at the death of the testator the trust was valid.

"2. We, the jury, find that the plaintiff is of sound mind, but weak in mind to that extent that we do not consider him capable of managing his estate. And we also find that reasonable counsel fees, and costs for defense of this suit, be paid by George S. Obear, executor of the estate of Wm· Gray."

Two other previous verdicts were returned, which the court declined to receive, holding that they were insufficient to base a decree thereon. Subsequently to the last, complainant filed a petition, setting forth all three verdicts, and asking, in distinct counts, that a decree be entered in his favor upon each, setting forth the peculiar provisions of the decree which he claimed should be rendered. The court declined to accede to the prayer of the petition, and decreed in favor of defendant on the last verdict. To all of which complainant excepted.

Exceptions were also taken by the complainant to various portions of the charge given, and by both complainant and defendant to numerous refusals to charge, all of which is omitted here as immaterial, in view of the decision.

Error was assigned upon the exceptions, as above stated.

R. F. LYON; J. & J. C. RUTHERFORD, for plaintiff in error.

LANIER & ANDERSON, HILL & HARRIS, for defendant.

JACKSON, Judge.

1. When this case was before this court first, reported in 54 *Ga.*, 231, it was held that the testator could not create a valid trust for his son, unless he was a minor or *non compos mentis*, and that if Edwin T. Gray was sound in mind, the trust being for his benefit alone, that the use executed the trust, and Gray was entitled to recover on a bill requiring his trustee to turn over the property to him. The case was again brought to this court on the propriety of allowing an amendment setting up that Gray was *non compos mentis* when the will was made, and was so still. This amendment was allowed.

The question, therefore, of the power of the testator to create a trust for Gray's benefit, if he was sound in mind, may be considered settled against the power by the judgment of a unanimous court in this case itself, and it must be considered *res adjudicata.* The corollary drawn from this premise, that the use executed the trust, and that Gray took an absolute estate when he became sound in mind, and could demand the delivery thereof and an account from his trustee, Obear, therefor, was also decided by a full bench in this case, in 54 *Ga.*, 231. It might well be doubted whether this was the law of this case but for that judgment *in the case.* See 2nd Term, marg. p. 444 (Dun. & East, 2 vol., 179); 2 Rich. Eq., 52; Blackstone's Com., book 2, chap. 20, p. 336. For the act denying the power to create a trust for one of sound mind being repealed by the act of 14

December, 1863 (acts of '64, p. 100), left the power as at common law, with a strong implication that the trust might be created where there was something to do, as in this case, to preserve the corpus, collect the income, and pay only that over to the *cestui que trust*, and the authorities above cited seem to indicate that it might have been done at common law. But it is *res adjudicata*, and we are bound by the judgment rendered in 54 *Ga.*, 231, and express no opinion upon it, other than to say that the judgment there rendered binds us.

It is important in this case, however, to define what is soundness of mind under the laws of Georgia; that is, such soundness of mind as would authorize the creation of a trust and the keeping it undisturbed by the *cestui que trust.*

2. The Code declares, in section 2306, that "trust estates may be created for the benefit of any female or minor, or person *non compos mentis*." There was formerly a negative provision in this section that they should not be created for a male person *sui juris* and of sound mind; but this was repealed by the act of 1864, cited above.

The question, then, becomes this: who is *non compos mentis* in the sense of section 2306? Other sections of our Code throw great light upon this question, and if we can find anything in our own statutes shedding light thereon, it is the best light with which to look at this section and ascertain its meaning.

Section 1658 declares that all "persons *non compos mentis*, either from birth or from subsequent causes, constantly or periodically, or from age, infirmity, drunkenness, or otherwise incapable of managing their affairs, may have their persons and estates, or either of them, placed in the control of guardians. Such persons retain all the rights of citizens which they have the capacity to enjoy, and which are compatible with their situation."

It is very clear to us from this section, that our statute law defines the words *non compos mentis* as meaning unsoundness of mind in many degrees. One may be so unsound in

mind as to be sent to the insane asylum ; another, as to have a guardian for his person as well as his estate ; a third, as only to require a guardian for his property, to see that it be not wasted ; and a guardian for property is but a trustee.

It does not matter that this section is placed in the Code under the article " Citizens." It is part of our law, adopted by the legislature and ratified by the constitution of 1868. And any portion of a body of laws may well be invoked to ascertain the meaning of words and phrases used in another part. · Besides, this section reserves the general rights of citizenship, while it takes property away from the citizen ; and this, too, the citizen's own property, coming to him free of any trust or any condition whatever.

So section 1852 declares that, " the ordinaries of the several counties of this state may appoint guardians for the following persons, viz : idiots, lunatics, and insane persons, and deaf and dumb persons, when incapable of managing their estates, habitual drunkards, and persons imbecile from old age or other cause, and incapable of managing their estates."

These persons, imbecile from old age or other cause, may have guardians appointed to manage their estates, if they are incapable of doing so. And this section shows that besides idiots and lunatics, others are regarded insane, and that there are degrees of insanity. So section 1855, in providing how a commission may be had to get a guardian appointed, after providing for the jury, or committee, of eighteen, one to be a physician, requiring twelve to act, *including the physician*, requires the " *inspection* " of the " *person*," and hearing and examining witnesses on oath, if necessary, to determine " his condition and capacity to manage his estate," and in their return to specify " under which of said classes they find the said person to come."

From these sections of our Code, it seems quite clear that there are different degrees of unsoundness of mind, for which different remedies are provided, and from them we deduce the conclusion that the test as to whether there should be the guardian appointed to manage a man's estate, is this :

is his mind so unsound, or is he so weak in his mind, or so imbecile, no matter from what cause, that he cannot manage the ordinary affairs of life—the ordinary estates of men.

The trouble in the case at the bar is, that the jury has not found a consistent, intelligent verdict, on which a decree can be rendered. They find the trust estate valid, but they find the complainant now of sound mind, and yet incapable of managing his estate, without stating how or wherein now incapable. They were sent back by the judge several times, but the verdict finally rendered is to that effect.

Upon this verdict the court decreed for the defendant, Obear. We think that this decree was unauthorized by the verdict. The jury may have intended to say that Gray was so unsound, or weak, in intellect as to be incapable of managing his estate, but they have not said so in language consistent with itself. In other words, the verdict is inconsistent with itself, and upon it no decree could be rendered so as to follow it. This view of the verdict also disposes of the complainant's motion, or petition, to decree upon it in his favor. We think that the court was clearly right in refusing that motion. A new trial must be awarded, that the jury may find whether Gray was so unsound in mind—so imbecile in intellect when the trust was created—that it was then valid ; and whether, if so unsound and imbecile then, he is now so sound in mind that he can manage his estate as ordinary men can their property—the burden being on the defendant, as put by the presiding judge—to show the first, and that being shown, then on the complainant to show the latter. Mark, the question is not whether Gray is such an idiot, or lunatic, or is so insane, that he ought to be sent to the asylum, or even to have a guardian for his person, but is he now so *non compos mentis*—so unsound in mind, or imbecile in intellect—*that he cannot manage property himself*.

If so, he would need a guardian, under the law, for his property ; and, consequently, the guardian for property bequeathed for his benefit by his father, appointed by that

father, ought to manage it; or, in other words, the trustee so appointed should continue to carry out the trust, which is clearly executory.

The same principle of degrees in unsoundness of mind and of imbecility or weakness of intellect being sufficient to authorize guardianship, and, therefore, the appointment of trustees to manage property, is decided and elaborated, on a review of all the authorities, by Chancellor Kent, in 2d Johnson's Chan. Rep., 232, and in Brown's Med. Jurisprudence of Insanity, pages 69, 70, 71, 79, 96.

The result of the whole investigation from our own statutes, as well as from the highest judicial utterances elsewhere, is, that if there be such a degree of unsoundness or imbecility of mind as to incapacitate one from managing the ordinary business of life, and such ordinary estates as people usually possess, it will authorize the maintenance of the trust and the authority of the trustee.

3. There was no error in permitting all persons to give their opinions of the condition of Gray's mind, based upon their reasons therefor, and the sufficiency of the reasons was a question for the jury in estimating the weight to which the opinions were entitled.

4. We do not think that the sayings of the testator were admissible to show the unsoundness of Gray's mind. On an issue of *devisavit vel non,* such sayings to show the condition of the testator's mind are admissible, of course, because the best evidence of his sanity would be the manner in which he would talk, and what he would say on different subjects of conversation. But, on the question of the sanity of other persons, particularly where title to property is involved, it has been ruled by this court that family reputation and hearsay of all sorts are inadmissible. See 6 *Ga.,* 291; 9 *Ga.,* 539; 31 *Ga.,* 424.

5. We think that the court ruled properly in allowing Obear to testify as to the value of the bonds and what he sold them for, and what they have been worth since; and to rebut the charge of secreting the property with a view to

defraud, we think the memorandum in the book of Obear admissible.

6. The evidence of the acts of Gray from boyhood to the trial, were admissible to illustrate the condition of his mind at the time the bequest was made, and whether or not he has since become *sui juris*, or of sufficient soundness of intellect to manage his business.

We believe that the foregoing rulings will give our ideas of the law of this case upon all the questions which have been made in this voluminous record and pressed for our judgment here. Mainly for the reason that the jury, after three several trials and returns to their room under the direction of the court, made at last a verdict inconsistent with itself, and on which both parties insist on a decree in their favor, we award a new trial, reversing the judgment of the court in entering the decree in favor of defendant upon the verdict, and in ruling in the sayings of the testator in respect to the condition of his son's mind.

Judgment reversed.