28  209
34   64
f34  105

(No. 4178.)

## SHAPTER V. PILLAR.

1. INSANITY—APPELLATE PRACTICE—PARTIES.

Ordinarily one adjudged *non compos mentis* can only act through a recognized representative, but this is not the case where the object of the action is to determine the legality of the judgment, adjudging him incapable of managing his own affairs. Where in a proceeding for that purpose in the county court a party is adjudged incapable of managing his own affairs on account of his insanity and a conservator is appointed he may in his own name prosecute error to such judgment in the supreme court. So long as the action for that purpose is undisposed of, the judgment of the trial court regarding his mental capacity is not conclusive.

2. INSANITY—CONSERVATOR.

In a proceeding to have a party adjudged incapable of managing his own affairs and to have a conservator appointed, it is not necessary to show that the party is absolutely insane and entirely bereft of reason, but if a mental infirmity exists of such character and to such a degree that the person so afflicted is for that reason unable to act intelligently with respect to his business affairs, or is affected with mental imbecility not strictly insanity, but to such an extent that he is deprived of the power to act in a proper and provident manner in the management of his property interests, a conservator may be appointed. On the other hand, although the mind may not be sound, if the person retains sufficient reasoning capacity to manage his business affairs, although the management might not be such as intellectual vigor and skill might approve, he would not come within the purview of the statute as requiring a conservator.

3. SAME—DEGREE OF INSANITY.

The degree of insanity necessary to warrant the appointment of a conservator must be such as incapacitates from properly and safely managing ordinary business affairs.

4. INSANITY—CONSERVATORS—NATURAL AND CONSTITUTIONAL RIGHTS.

Our statute authorizing the appointment of conservators as herein construed is not in violation of any natural or constitutional rights of acquiring, possessing and protecting property.

5. INSANITY—CONSERVATORS—EVIDENCE—OPINIONS OF WITNESSES.

In a proceeding to have a person declared insane and to appoint a conservator, witnesses who have seen and conversed with the person

can properly give their opinion on the question of his insanity, but it is
error to admit the opinion of witnesses as to the degree of his insanity,
or as to whether he is thereby incapacitated from managing his busi-
ness.   Whether or not he is so incapacitated is for the jury to deter-
mine from the probative facts bearing thereon.

6.   INSANITY—CONSERVATOR—EVIDENCE—INTEREST OF WITNESSES.

In a proceeding for the appointment of a conservator, a witness
may be, within reasonable limits, cross examined for the purpose of
showing his motive or interest in the case that might have some influ-
ence upon his statements.

7.   INSANITY—CONSERVATORS—PHYSICAL CONDITION.

In a proceeding for the appointment of a conservator the physical
condition of the person for whom a conservator is requested can be
considered only so far as it affects his mental condition.

8.   INSANITY—CONSERVATORS—CHARACTER OF BUSINESS.

In a proceeding for the appointment of a conservator, in deter-
mining the degree of incapability of the person, the character and
extent of his business should be taken into consideration.   A person
might by reason of mental disturbance be incapacitated from properly
and safely attending to a complicated business, but capable of manag-
ing one not complicated.

9.   INSANITY—CONSERVATORS—WISHES OF WARD.

In the appointment of a conservator, all things being equal, the
court should so far as consonant with duty, select a conservator agree-
able to the wishes of the ward if he is not too insane to exercise a
sensible opinion upon that question.

*Error to the County Court of Arapahoe County.*

From a judgment, adjudging plaintiff in error so insane
or distracted in mind as to render him incapable of properly
or safely attending to or managing his estate, and appoint-
ing a conservator for that purpose, he brings the case here
on error.   He is about 65 years of age, and has been
afflicted with shaking palsy for over ten years last past,
which has rendered him quite feeble physically, affected his
power of speech, and, to some extent, impaired his mental
faculties.   He has an estate valued at between twenty-five
and thirty thousand dollars, which consists principally of
realty in the city of Denver.

The statute under which the proceeding was had is as follows:

"Whenever any reputable person shall file with the county court * * * a complaint, duly verified, and shall allege therein that any person in such county is a lunatic or an insane person, and is so distracted in mind as to render such person incapable of properly and safely attending to his affairs or managing his estate * * * the court, if satisfied that there is a good cause for the exercise of its jurisdiction, shall thereupon order a jury * * * to be summoned to inquire into such facts; * * *. If it shall be alleged in said complaint and proved to the satisfaction of the court that said lunatic or insane person has personal or real estate, and if the jury shall return in their verdict that such person is so insane or distracted in mind as to render him or her incapable of managing his or her estate, it shall be the duty of said county court to appoint some fit person to be the conservator of said estate." 3 Mills Ann. Stats., Sec. 2935, (Laws of 1893, p. 331.)

Over the objection of plaintiff in error, several witnesses, both professional and non-professional, were asked to give an opinion regarding his capability of properly or carefully managing his business affairs, the answer in each instance being in the opinion of the witness, that he was incapable.

Mr. E. T. WELLS, Mr. M. F. TAYLOR and Mr. R. T. McNEAL for plaintiff in error.

Mr. GEORGE A. SMITH for defendant in error.

Mr. A. W. GILLETTE *amicus curiæ.*

Mr, JUSTICE GABBERT delivered the opinion of the court.

It is suggested by counsel *amicus curiæ* that the plaintiff

in error having been adjudged incapable of managing his own affairs, this proceeding should be dismissed for the reason that he cannot now prosecute a cause, except through the intervention of a guardian or next friend; or if this is not the correct view, we should require him to be brought into our presence for the purpose of ascertaining his mental condition, and capability of electing to prosecute the writ of error in this case. The constitution provides, sec. 22, art. 6, that writs of error shall lie from the supreme court to every final judgment of the county court. Ordinarily, it is true, that one adjudged *non compos mentis* can only act through a recognized representative, but this is not the case where the very object of the action is to determine the legality of the judgment, adjudging him incapable of managing his own affairs. In the original proceeding, he is entitled to be heard, appear by counsel and produce witnesses; and although the judgment of the trial court may be that the management of his estate should be taken out of his hands, he is entitled to be heard touching the validity of such proceedings. *In re Moss*, 53 Pac. 357.

So long as the action for that purpose is undisposed of, the judgment of the trial court regarding his mental capacity is not conclusive. *Cuneo v. Bassoni*, 63 Ind. 524.

The sole province of this court in a proceeding of this character is to investigate the regularity of the proceedings which plaintiff in error seeks to have reviewed. If they are so in all respects, and the evidence is sufficient to support the judgment rendered, we cannot inquire into the question of the sanity of plaintiff in error. If prejudicial error exists, and there appears to be sufficient to warrant an inquest, the case must be remanded for a new trial, for the purpose of determining the sanity of the plaintiff in error, in the manner which the statute provides.

Counsel for plaintiff in error contend that the statute under which this proceeding was instituted in the court

below only applies to those entirely bereft of reason, and if it is not susceptible of this construction, it is unconstitutional, because it violates natural rights. The object of the statute is to protect those whose mental faculties are affected to such a degree as to render them incapable of properly and safely managing their business affairs. The language employed indicates this purpose. It says, in effect, if it appears that any person is so distracted in mind as to render him incapable of safely and properly managing his estate, and a jury shall so find, a conservator shall be appointed. Absolute insanity is not the only test. The main object of the statute is the protection of the property of those mentally afflicted; inquiry must be made as to the extent of such mental infirmity. If it exists in such a degree, and is of such a character that the person so afflicted is for that reason unable to act intelligently with respect to his business affairs, or is affected with that imbecility of mind not strictly insanity, but to such an extent that he is deprived of the mental power to act in a proper and provident manner in the management of his property interests, the statute is satisfied. *Ridgway v. Darwin*, 8 Ves. 65; *McElroy's case*, 6 W. & S. (Pa.) 451; *Calderon v. Martin*, 50 La. Ann. 1153; *Nailor v. Nailor*, 4 Dana (Ky.) 339; *Gray v. Obear*, 59 Ga. 675; *McCammon v. Cunningham*, 108 Ind. 545; *Fiscus v. Turner*, 24 N. E. Rep. 662; *In Matter of James Barker*, 2 Johns. Ch. (N. Y.) 232.

On the other hand, although the mind may not be sound, "if there be capacity to manage, as the result of consecutive reasoning, although the management might not be such as intellectual vigor and skill might approve," the party retaining the possession of his mental faculties to this extent would not come within the purview of the statute. *Commonwealth v. Schneider*, 59 Pa. St. 328.

The many authorities cited by counsel for plaintiff in error to the effect that partial unsoundness of mind on the

part of those executing deeds, wills and contracts would not avoid such instruments, provided it appeared at the time of execution that the party was possessed of sufficient mental ability to comprehend in a reasonable manner the nature and effect of the transaction, does not militate against our construction of the statute in question, but is in harmony with its spirit, which recognizes that the degree of insanity necessary to warrant the appointment of a conservator must be such as incapacitates from properly and safely managing ordinary business affairs. Neither is our construction a violation of any natural or constitutional rights. Our constitution provides that all persons have certain natural and inalienable rights, among which may be reckoned the right of acquiring, possessing and protecting property. It also provides that the enumeration of rights shall not be construed to deny, impair or disparage others retained by the people— Secs. 3 and 28, Art. 2, constitution. It falls to the state to take care of those who, by reason of mental incapacity, cannot take care of themselves. *Ex Parte Cranmer*, 12 Ves. 445.

In the absence of any statutory provision on the subject, a court of chancery, under the rules of common law, would undoubtedly have authority to protect the estate of those who by reason of mental infirmities, were unable to do so, and to accomplish this end, could appoint a proper person for that purpose.

The vital question which the jury was required to determine if it appeared that the mind of plaintiff in error was affected, was, whether or not it was deranged to such a degree that he was incapacitated from safely and properly managing his estate. When the question at issue involves peculiar skill or the knowledge of a particular science, in which persons instructed by study or experience may be supposed to have more skill or knowledge than the average person, the opinion of an expert thereon may be received.

Where the question at issue is such that it would be impossible for a witness to state all the facts or portray all those matters which created an impression upon his mind, his opinion may be taken. These two rules arise from the necessity of the case. On the other hand, when the facts can be given the jury from which a particular inference can be drawn, which is the one to be determined, and concerning which persons of average ordinary intelligence are capable and competent of determining for themselves, opinion evidence is not admissible. *Smuggler Union M. Co. v. Broderick*, 25 Colo. 16; 3 Taylor's Evidence, §§ 1416, 1417, 1419; *Ferguson v. Hubbell*, 97 N. Y. 507; *Graham v. Pa. Co.*, 139 Pa. St. 149; *Stumore v. Shaw*, 68 Md. 11; *Hamrick v. State*, 34 N. E. Rep. 3.

Applying these rules, it is manifest that the opinions of the witnesses regarding the incapability of plaintiff in error, to manage and control his own business affairs, should have been excluded. Those who had seen and conversed with him could properly give their opinion on the question of his insanity, but the vital one—*i. e.*, the degree of his mental incapacity on that account—and the extent to which he may have been incapacited thereby, from managing his business, the jury should have determined from all the evidence on the subject. It was not a question which required peculiar skill or knowledge to comprehend; it was one which men of ordinary, average intelligence, after being acquainted with the hallucinations, if any, of plaintiff in error, his acts and thoughts prompted thereby, could ascertain for themselves, based upon their own experience and observations. In principle, the important question for the jury to determine was the same as in cases where the capacity of a testator to make a will, or of a grantor to execute a deed, is in issue, and the great weight of modern authority in such cases, in the absence of any statutory provision, is, that such capacity is not properly the subject of opinion evidence, but must be

determined from the probative facts bearing thereon.

Other errors are assigned and argued, which we do not deem it necessary to notice, further than to indicate that within reasonable limits a witness may be cross-examined for the purpose of showing his possible motive, bias or interest in a case which might have some influence upon his statements, or prompt his action; that in a case of this character the mental and not the physical condition of the person for whom a conservator is requested is the main feature; and that the latter can only be considered in so far as it may affect the former; that in determining the degree of incapability of such person, the character of his business and its extent should be taken into consideration. A party might be incapacitated by reason of mental disturbances from properly and safely attending to a complicated business, but capable of managing one which was not. Although in a degree mentally afflicted, his disposition to husband or waste his estate should also be considered. It is not the province of the trial judge to examine witnesses further than to ascertain if he has a correct understanding of what they may have stated. All things being equal, the court should, so far as consonant with duty, select a conservator agreeable to the wishes of the ward. Especially is this true if the latter is not so insane that he cannot exercise a sensible opinion upon that question *Allis v. Morton*, 4 Gray (Mass.), 63.

Counsel upon both sides have urged with considerable warmth the respective merits of this case. As already indicated, we cannot determine the mental capacity of the plaintiff in error; the subject is controverted. It must be determined by the statutory method, but in so doing, the rules of evidence must be observed. The alleged mental condition of plaintiff in error, and other unfortunates of like character which the statute is designed to protect, demands that great care should be exercised by the courts in determining whether the control of their estate should be taken out of

their hands or not.

The judgment of the county court is reversed and the cause remanded for further proceedings.

*Reversed and Remanded.*