[No. 4654.]

The Denver & Rio Grande Railroad Company v. Scott.

1.  Evidence—Insanity—Opinions of Witnesses.

A witness may be permitted to give his opinion upon the question of a person's sanity after stating the facts upon which he bases it, but he may not give an opinion as to the degree of mental incapacity, or as to whether a person is mentally incapacitated to make a valid and binding contract.

2.  Negligence—Instructions—Evidence—Railroads.

In an action against a railroad company for injuries to a fireman alleged to have been the result of the failure of the brakes on the train to work while going down grade whereby the trainmen lost control of the train and it attained an excessive rate of speed, it was error to submit to the jury the alleged negligence of defendant in failing to furnish driver brakes on the engine, where the evidence fails to show that the absence of the driver brakes in any way contributed to the loss of control of the train, and does show that the engine was provided with water brakes which were equally or more effective in checking the speed of the engine.

3.  Railroads—Negligence—Assumption of Risk.

Where the absence of driver brakes from an engine was so obvious that the most casual observation would have disclosed their absence, if the danger in operating the train without them was greater than it would have been with them, the fireman

by accepting service on said engine assumed the additional risk and cannot recover for injuries resulting from the absence of such brakes.

**4.  Personal Injuries—Measure of Damage.**

Damages for personal injuries that are not willfully or maliciously inflicted should be awarded as and for reasonable compensation.

**5.  Personal Injury—Excessive Damages.**

In an action for personal injury where the jury returned a verdict so large that no reason is apparent for the amount of the verdict except that it was given under the influence of passion or prejudice, it was the duty of the trial court to set aside such verdict and grant a new trial.

*Appeal from the District Court of El Paso County: Hon. Louis W. Cunningham, Judge.*

On December 20, 1900, the appellee was in the employ of the appellant as a fireman, and on the evening of that day was in that capacity on an engine pulling a freight train consisting of 16 loaded and 12 empty cars which left Cumbres station and began the descent of the western slope of the San Juan range in southwestern Colorado. After the train had passed Coxo, a mile and a half from Cumbres, the air brakes did not take hold with effect, and, owing to the steep grade, the train attained a velocity of 35 or 40 miles an hour and continued running at this speed about a mile and a half until it reached a point near Chama, where it was stopped by the vigorous use of the hand brakes. The appellee claims that the failure of the air brakes to check the speed of the train was because of their defective condition. The appellant contends that by reason of the extreme cold the brakes and wheels became so thoroughly chilled while standing that the brakes, although in good condition, would not effectively operate until they became sufficiently warm by friction to enable them to take hold with full effect

While the train was running with such rapid speed the appellee became panic stricken and jumped from the locomotive and was severely hurt, sustaining a severe injury to his spine and also a severe contusion on the head which, according to some of the medical witnesses, amounted to a fracture of the skull.

He was taken at once to Chama, the nearest station, and on the next day to the company's hospital at Salida, where he was treated for his injuries. He remained at the hospital from December 22, 1900, to January 17, 1901, when, not requiring any further hospital treatment, he was discharged and went to his own people on a ranch near Falcon, Colorado. After a short time, believing himself well enough to return to work, he went to Alamosa and resumed his duties as fireman. After a few days, finding the work was too hard, and desiring some easier employment, the local superintendent of machinery at Alamosa under whom he was working gave him a letter to Mr. Schlacks, superintendent of machinery for the entire system, whose headquarters was at Denver, and appellee came to Denver about the end of April, 1901. Mr. Schlacks was then absent from the city, and the appellee called upon Mr. Mitchell, the claim agent of the company. After a conversation occupying more than an hour, in which, according to Mr. Mitchell's testimony, the appellee went over with him all the circumstances of the occurrence and grounds of his claim which appellee claimed entitled him to damages, Mr. Mitchell, while claiming that under the facts the company was not liable to the appellee in damages, consented and offered to pay to appellee the sum of $150 upon condition that appellee would execute a release for any and every claim which he asserted and might have against the appellant on account of said injury, and the following

release was drawn up and signed, sealed and delivered by the appellee in the presence of C. S. Mitchell and Beverly G. Honeyman:

"The Denver & Rio Grande Railroad Company.
"General Release.

"Know all men by these presents, that I, John A. Scott, of the county of Conejos and state of Colorado, in consideration of the sum of one hundred and fifty dollars ($150), to me in hand paid by The Denver & Rio Grande Railroad Company, the receipt whereof is hereby acknowledged, do hereby release and forever discharge the said company and all companies whose lines are operated or known as a part of The Denver & Rio Grande System of and from all claims, demands, actions and causes of actions which I now have in law or equity, or which may result from any contracts, doings or omissions at any time up to the date hereof.

"And I do hereby more particularly release and discharge the said The Denver & Rio Grande Railroad Company and each and every of said companies from all claims and demands that I now have or that may hereafter arise by reason of having my spine injured, head, face and neck cut and bruised, and any and all other injuries to my person that I received when I jumped or fell from the locomotive of a runaway freight train, owing to air brakes alleged to have been defective failing to work at or near Cumbres, Colorado, on or about December 20th, A. D. 1900.

"Witness my hand and seal this 30th day of April, 1901.

(Signed)   "John A. Scott.     (Seal)
"Signed, sealed and delivered in presence of
(Signed)   "C. S. Mitchell,
"Beverly G. Honeyman."

The plaintiff received a check from the company for the $150 mentioned in the release and had same cashed in Colorado Springs. After remaining a short time on the ranch at Falcon he again went to Alamosa and reentered the service of the defendant and remained in such service until the latter part of 1901, when he returned to Falcon and has resided there and at Colorado Springs since. In the early part of 1902 he instituted this action, which was tried in November and resulted in a verdict and judgment in favor of plaintiff for $49,850 and costs. From this judgment the defendant prosecutes this appeal.

Messrs. WOLCOTT, VAILE & WATERMAN, Mr. W. W. FIELD and Messrs. McALLISTER & GANDY, for appellant.

Messrs. McKESSON & LITTLE and Mr. GEORGE GARDNER, for appellee.

Mr. JUSTICE GODDARD delivered the opinion of the court.

1. Among other affirmative defenses the defendant pleaded the release set out in the foregoing statement as an accord and satisfaction of the claim sued on. The plaintiff replied that at the time he signed the release "he was mentally incompetent to understand what he was doing and that the same was procured by misrepresentation and fraud on the part of the claim agent." Upon this issue the defendant introduced the release, the check by which the consideration mentioned in the release was paid and the receipt for such payment, and the testimony of Mr. Mitchell and Beverly G. Honeyman, stenographer in his office, as to what occurred at the time of the signing of the release, which was to the effect that after discussing the matter of the plaintiff's injuries for a consider-

able time the agent offered to pay and the plaintiff agreed to accept the $150 in full settlement as therein expressed; that Mitchell drew up the release, and after informing him what it was, handed it to plaintiff, who, after apparently reading it carefully, expressed his satisfaction and signed it. Plaintiff testifies in substance that he did not distinctly remember what took place in Mr. Mitchell's office; that he had no recollection of reading and signing the release, but signed what he understood to be a receipt for money paid him for lost time.

We think that under the testimony relating to what occurred at this time the only question for the jury to consider in determining whether the release was binding upon the plaintiff was the state of his mind at that time, that is, whether he was mentally incapacitated to make a valid and binding contract. Several witnesses who were relatives and neighbors of plaintiff testified to what they had observed in the appearance and demeanor of plaintiff during his residence at Falcon after the accident and prior to April 30, 1901, the expression of his face and eyes, how he acted and talked, and to all matters which created an impression on their minds as to his mental condition. Over objection they were permitted to state that, in their opinion, his mental condition in the latter part of April was very bad. Dr. Hill, the physician who attended upon plaintiff during this time, after fully stating his physical and mental condition, was asked the following question: "Doctor, I wish you would tell the jury what the fact was, in your judgment; as to whether Mr. Scott, the plaintiff, was or was not able, in the month of April, 1901, to transact business, including such business as the settlement of the claim on account of the damages that he had sustained, if any, by reason of

injuries from which he was suffering." And, over objection, he answered: "I should say he was not."

The rule is settled in this jurisdiction that opinion evidence is not admissible when all the facts upon which such opinion is based are before the jury, and from which the inference to be drawn is one that persons of ordinary intelligence are capable of determining for themselves.—*Shapter v. Pillar*, 28 Colo. 209, and cases there cited.

The weight of authority supports the rule that when it is impossible for a witness to state the facts so as to convey to the minds of the jury all the matters and things that created an impression on his mind his opinion may be given, and that he may give an opinion upon the question of a person's sanity after stating the facts upon which he bases it; but it is equally well settled that he may not give an opinion as to the degree of his mental incapacity or as to whether a person is mentally incapacitated to make a valid and binding contract. The latter involves a question of law as well as of fact, and was the very thing the jury were called upon to determine from all the evidence, under proper instructions of the court.— *Estate of Taylor*, 92 Cal. 564; *Shapter v. Pillar*, 28 Colo. 209; *Farrell v. Brennan*, 32 Mo. 328; *Brown v. Mitchell*, 88 Tex. 350.

"The character of the derangement being made known to the jury by witnesses, it then becomes the privilege and the duty of the jury to determine whether that degree of capacity remains which is essential to the demands of ordinary business affairs.

"An opinion may not be given upon the point which it is the duty of the jury to determine."— *Hamrick v. State*, 134 Ind. 327.

The opinion of the witnesses as to the degree of plaintiff's mental derangement and regarding his

incapacity to execute the release in question should have been excluded.

2.  The case was submitted to the jury upon several specific charges of alleged negligence upon the part of the company, some of which, under the evidence, should have been withdrawn from its consideration. Among them was the failure to furnish driver brakes on the engine.  The evidence fails to show that the absence of the driver brakes in any way contributed to the loss of control of the train; it had provided the engine with water brakes which, the testimony showed, were equally if not more effective in retarding or checking the speed of the engine; or that the company was remiss in the discharge of any duty imposed upon it in failing to equip its engines with them.—*Tramway v. Nesbit,* 22 Colo. 408; *F. C. Ass'n v. Davis,* 4 Colo. App. 570; *Titus v. Railroad Co.,* 136 Pa. St. 618; *C. & G. W. Ry. Co. v. Armstrong,* 62 Ill. App. 228.

And furthermore, their absence was so obvious that plaintiff knew or could have known by the most casual observation that they were not provided on that engine.  And if the danger in operating the train without them was greater than it otherwise would have been, the plaintiff assumed this additional risk and is not entitled to recover for injuries resulting therefrom.—*Wells v. Coe,* 9 Colo. 159; *Tramway v. Nesbit, supra; B. & C. R. R. Co. v. Liehe,* 17 Colo. 280; *Stiles v. Ritchie,* 8 Colo. App. 393.

It is impossible to ascertain what effect this alleged negligence had upon the minds of the jury or how much they were influenced by the fact that the engine was not equipped with driver brakes in reaching the conclusion that the company was negligent in the premises.  In these circumstances it is not incumbent upon us to pass upon the assignments of error based upon other alleged omissions of duty

on the part of the company, it being impossible to determine upon which of these specific charges, if upon either, the jury based its finding that the company was in fault.

3. We think the court below was remiss in its duty in not sustaining the motion for a new trial upon the ground that the verdict was excessive. The record discloses no reason why exemplary damages should be assessed against the defendant, and we can conceive of no reason why such an extraordinary amount was allowed unless it was "given under the influence of passion or prejudice." Damages for injuries received that are not willfully or maliciously inflicted should be awarded as and for reasonable compensation. We think the language used by the court in *U. P. Ry. Co. v. Hause*, 1 Wyo. 34, is applicable here: "That the award is not only excessive but unreasonable, and were it not that we do not feel disposed to deal in terms of harshness we might say that the jury either did not comprehend the obligation implied by their oaths or else some demon of malevolence perverted their judgment so as to lead them into a vindictive spirit of persecution."

The court below should not have been so astute in finding reasons for throwing upon this court the responsibility of rectifying this wrong, but should have faced its duty and set the verdict aside.

For the reasons given, the judgment will be reversed and the cause remanded.          *Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur. _____