28956. ROYAL INDEMNITY COMPANY *et al.* v. AGNEW.

378

Decided October 24, 1941.    Rehearing denied December 16, 1941.

*Hirsch, Smith & Kilpatrick, D. F. McClatchey, W. B. Cody, E. D. Smith Jr.,* for plaintiffs in error.

*Edward B. Lovell,* contra.

MacIntyre, J.   One year, five months, and eighteen days passed between the date of the alleged accident on which this claim was based and the date of the filing of the claim with the Industrial Board.   The claimant contends that the one-year statute of limitations within which to file his claim was tolled by reason of mental incompetency as provided for in Code § 114-306:  "No limitation of time provided in this Title for the giving of notice or making claim shall run against any person who is *mentally incompetent* or a minor dependent, as long as he has no guardian or trustee, or to a person who proceeds in good faith against a corporation supposed to have a legal entity but which is proved to be defunct by reason of the expiration of its charter." (Italics ours.)   The Code, § 114-305, provides, in part:  "The right to compensation under this Title shall be forever barred unless a claim is filed with the Department of Industrial Relations within one year after the accident, and, if death results from the accident, unless a claim therefor is filed with the department within one year thereafter."

In the absence of anything in the workmen's compensation act to indicate that anything different was intended, the term "mentally incompetent," as used in the statute exempting such person from the application of the limitation provision (§ 114-305, supra), must be given the same scope and meaning as that which is accorded to it, or words of similar import, in other statutes which deal with the status of persons generally.   71 C. J. 1023, § 798.   With reference to the tolling of the statute of limitations generally, our Code, § 3-801, provides:  "Infants, idiots, or insane persons, or persons imprisoned, who are such when the cause of action shall have accrued, shall be entitled to have the same time, after the disability shall have been removed, to bring an action, as is prescribed for other persons."   The section immediately following provides:

"If either of the foregoing disabilities shall happen after the right of action shall have accrued, and shall not be voluntarily caused or undertaken by the person claiming the benefit thereof, the limitation shall cease to operate during its continuance." Code, § 3-802. Thus, the statute is tolled whether the disability existed at the time of the accrual of the cause of action or subsequently thereto.

There is nothing in the act indicating that a different meaning was to be given it, and in the light of the context of § 114-306 and the section immediately following it, we think the lawmakers, in framing the act, had distinctly in mind the provisions of our Code dealing with persons for whom a guardian or trustee (who is but a guardian of property) may be appointed. *Francisco v.* Industrial Acc. Com., 192 Cal. 635 (221 Pac. 373). Upon referring to our Code, we find that a guardian may be appointed for "insane persons, deaf and dumb persons when incapable of managing their estates, habitual drunkards, and persons imbecile from old age or other cause and incapable of managing their estates." Code, § 49-601. It also appears that a guardian for property (a trustee) may be appointed for "any minor or person non compos mentis." Code, § 108-114. Black's Law Dictionary indicates that insane persons and persons non compos mentis are synonymous, and defines both as persons "of unsound mind." Our Code, § 102-103, indicates the same, and provides: "Lunatic, insane, or non compos mentis, each includes all persons of unsound mind." Thus we come to the query, what is meant by insane persons or persons non compos mentis? Here again we refer to our Code under the title "Persons," but this does not matter, for any portion of a body of laws may well be invoked to ascertain the meaning of words and phrases used in another part. Furthermore, this section which we are about to quote deals with the status of persons generally, and may be referred to in determining the intention of the legislature in using the phrase "mentally incompetent." *Gray v. Obear,* 59 *Ga.* 675, 680. The Code, § 79-209, provides: "All persons non compos mentis, either from birth or from causes accruing subsequently, constantly or periodically, or from age, infirmity, drunkenness, or who are otherwise incapable of managing their affairs, may have their persons and estates, or either of them, placed in the control of guardians. Such persons retain all the rights of citizens which they have the capacity to enjoy, and which are compati-

ble with their situation." It may be noted that this section, while it provides for the taking away of a citizen's property, yet reserves to him the general rights of citizenship.

From a consideration of the Code sections cited above it is clear that the Code defines insane persons, or persons non compos mentis, or as applied to the facts of this case, persons "mentally incompetent," as meaning persons with unsoundness of mind in many degrees. In *Gray* v. *Obear*, supra, page 680, the court treated such condition of mind as being of three degrees as follows: 1. One who is so unsound as to be sent to an asylum. 2. Another so unsound as to have a guardian of his property and of his person. 3. Another so unsound as to have a guardian only of his property, to see that it is not wasted; that is, a trustee. It must be borne in mind that under such definition of "mentally incompetent" no account is taken of physical infirmities, yet it is certain that when a person becomes mentally disabled (incompetent) from whatever cause the disability may arise, whether from sickness, vice, casualty, or old age, he is equally a fit and necessary object of guardianship and protection. Matter of James Barker, 2 Johnson's Chan. R. 232, 233 (N. Y.). In other words, the test as to whether the claimant is so "mentally incompetent" as to toll the running of the statute of limitations, in this: is his mind so unsound, or is he so weak in his mind, or so imbecile, no matter from what cause, that he can not manage the ordinary affairs of life?

The question in the instant case is not whether Agnew, the claimant, is such an idiot or lunatic or so insane that he ought to be sent to the asylum, or even have a guardian for his person, but, was he, during the year 1939 (a period of time sufficiently long to avoid the bar of the statute of limitations), so "mentally incompetent" (non compos mentis or insane), so unsound in mind, or so imbecile in intellect, that he could not manage his ordinary affairs of life? If there be such a degree of unsoundness of mind or imbecility as to incapacitate one from managing the ordinary business of life, it will authorize the board to find that the claimant was "mentally incompetent," and thus to find that the statute was tolled during the period of time the claimant is "mentally incompetent" and until the disability shall have been removed. Code, § 3-801; *Gray* v. *Obear*, supra, 679 (2).

The director found in favor of the claimant. The Industrial

Board affirmed the award and the judge of the superior court over-ruled the appeal. The defendants excepted.

The Industrial Board was authorized to find from the evidence that the claimant was injured in the scope of his employment on December 28 or December 30, 1938, and that he reported the injury within five minutes thereafter to the foreman. He obtained permission from the foreman to go to the company's clinic, and did so three times on the date of the accident, but received no treatment because of the absence of the doctor. He did not return to work. He was totally disabled from the injury and the natural consequences therefrom. He did not file his claim until June, 1940, and the defendants contend that his claim is barred by the one-year limitation as provided in Code § 114-305 supra. The all important and controlling issue is whether, under the evidence, the claimant was "mentally incompetent" as defined above, so as to toll the statute of limitations, and such tolling was for a sufficient length of time to prevent a bar. There was sufficient evidence from which the board could determine that the claimant was so incompetent.

Dr. F. C. Mims, who was admitted to qualify as a practicing physician, was asked the following hypothetical question based on the facts of this case and gave the answer stated: Q. "If a man to all outward appearances was healthy and steadily engaged in work every day, hard physical work, and he became injured so as to necessitate bed, house, and hospital confinement for a period of six months, and during a considerable part of that time was in such a physical condition that he couldn't even turn over in the bed or have bathroom privileges, that condition persisted for about six months and he exhausted all his money and had no income of importance, had a wife and several children, partly nourished, and some sickness among the members of the family, was unable to do any kind of work himself, or get about, got dependent upon his neighbors for food and other necessities, and was unable to pay for medicine or physicians, and suffered almost continuously with fever and pains throughout the body and had headaches, lapses of memory over a whole year, and had occasional crying spells and was depressed, would you say he was a man mentally normal during such period and capable of knowing and appreciating and physically and mentally able to look after his business and to preserve

and look after his legal rights?" A. "No, he would not have been." See *Metropolitan Life Insurance Co.* v. *Saul,* 189 *Ga.* 1 (2) (5 S. E. 2d, 214). Dr. M. T. Anderson, a pharmacist, testified that he had known the claimant for twenty years and that since the accident the claimant's mental attitude had not been that of a normal man. He was asked the following question and gave the answer stated: Q. "From your observation of him over that period of time, and from all of these manifestations you have seen, would you say that he has been capable in the last year and a half of knowing and preserving his rights?" A. "No, sir. Still I don't think he is." On cross-examination, he testified: "I do think now that he is [was] mentally incompetent of looking after his own self." W. H. McBrayer testified that during the winter of 1939 the claimant came into his store to purchase groceries which he had delivered at the claimant's home, and that the claimant's mental condition after he was hurt was altogether different from what it had previously been, and that he seemed to be affected mentally. Mr. J. D. Norred, a neighbor of the claimant for eight or nine years, testified that the claimant's mental attitude before he got hurt was good and that afterwards it was bad; that the claimant was in bed afterwards because of injuries, and would complain about the man looking after him persecuting him; that he was not mentally normal during the year 1939. Mr. W. D. Persley, president of the Live Oak Civic Club, testified that he had known the claimant about six years; that he was on the sick committee during the year 1939 and visited the claimant frequently; that since the claimant was sick and during the time he was sick he could not talk long on one subject and would drift back to his family and break down and start crying. Claud McCullough, who lived close to the claimant, testified that he had known him for about five years, and that since the accident "he kind of wandered off at times like something was pressing on his mind."

There was evidence from which the board could have found, as contended by the defendants, that the claimant was not "mentally incompentent," and that therefore the claim was barred by the statute which requires it to be filed within one year from the date of the accident. However, it being a question of fact whether the claimant was "mentally incompetent," under the evidence pointed out above the board was authorized to find as they did

that he was "mentally incompetent;" that is, incapable of managing his business affairs for the entire year 1939, and that therefore the claim was not barred, the statute having been tolled for one year out of the one year, five months, and eighteen days, the period of time which elapsed between the date of the accident and the date of the filing of the claim. Thus, under the general statute with reference to the tolling of the statute of limitations, Code §§ 3-801, 3-802, the claim was not barred. See *Elliott* v. *Gary*, 153 *Ga.* 665 (112 S. E. 900); *Farmers State Bank* v. *Kelley*, 155 *Ga.* 733 (118 S. E. 197); *Brown* v. *Carmichael*, 152 *Ga.* 353 (110 S. E. 3). Where there is any evidence to sustain the finding of the Board, this court is reluctant to interfere.

As to medical, surgical, hospital, and other treatment, the board did not abuse its discretion in awarding $500 therefor as provided for in the Code, § 114-501. There was sufficient evidence to authorize such a finding. The judge of the superior court did not err in overruling the appeal.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J. The defendants contend that the court overlooked their contention that the phrase "mentally incompetent" must be defined to be such incompetency as is denoted by the word "lunatic," and that this is a vital part of the case. Black's Law Dictionary defines a "lunatic" as a person of "unsound mind." Furthermore, the Code, § 102-103, quoted in the opinion, declares that a lunatic includes all persons of unsound mind, and a reading of the opinion discloses that the court dealt thoroughly with the definition of a person of unsound mind which includes the word "lunatic." This contention was not overlooked; nor do we think the award is inconsistent.

*Rehearing denied. Broyles, C. J., and Gardner, J., concur.*