## A11A2374. BROWN v. THE STATE.
### (723 SE2d 112)

PHIPPS, Presiding Judge.

Yohanne Brown was convicted after a nonjury trial for escape and tampering with the operation of an electronic monitoring device. He appeals his conviction for escape, contending that the evidence was insufficient to support that conviction. For the reasons that follow, we affirm the conviction.

> Upon a finding of guilt following a bench trial, the presumption of innocence no longer applies, and on appeal, the appellate court construes the evidence in favor of the judge's findings of fact. The appellate court does not weigh the evidence or determine witness credibility but merely determines the sufficiency of the evidence.[1]

So viewed, the evidence showed that on December 6, 2010, Brown was placed on electronic house arrest as a condition of bond while awaiting trial on criminal charges.[2] The order provided pertinently that Brown "shall serve . . . 240 . . . days home confinement with electronic monitoring under the . . . Electronic House Arrest Program ('EHAP')," was on "Total Lock-down," and was allowed to leave his home only to attend church. Brown was required to wear an

---

[1] *Placanica v. State*, 303 Ga. App. 302 (693 SE2d 571) (2010) (punctuation and footnote omitted).

[2] See OCGA § 17-6-1.1.

electronic leg monitor equipped with a global positioning system to monitor his compliance with the home confinement provisions. Approximately two months after the monitor was placed on Brown's leg, he cut off the monitor and fled. He was apprehended in another city at a bus station; a bus ticket on which his name appeared indicated a final destination outside of Georgia. At trial, Brown admitted that he had removed the electronic monitor.

Relying on OCGA § 16-10-52 (a) (2), Brown contends that the evidence was insufficient as a matter of law to support his conviction for escape because he was not in custody or confinement at the time of the incident giving rise to the escape charge. Relying on the same statute, the state, on the other hand, argues that electronically-monitored house arrest is confinement. Specifically, the state asserts that Brown was confined within the meaning of the statute because he was required to remain at his home at all times and the electronic monitor was designed to alert the state in the event Brown left his home, just as the state would be alerted if Brown left a jail cell. Alternatively, the state equated Brown's home to a diversion center where the failure to return thereto could subject a defendant to prosecution for escape.[3] The state also argued that not construing Brown as being in custody or confinement when on electronically-monitored house arrest would "end the use of electronic house arrest as a method of alternative confinement . . . [and] offenders would be free to escape house arrest with impunity."

The issue before us is whether a conviction for escape may arise from a violation of house arrest that was imposed as a condition of pretrial release; specifically whether Brown's placement on electronic pretrial release fits the definition of "lawful custody or lawful confinement" within the meaning of the escape statute, OCGA § 16-10-52 (a) (2).

OCGA § 16-10-52 (a) pertinently provides:

> A person commits the offense of escape when he or she: . . . (2) Being in lawful custody or lawful confinement prior to conviction, intentionally escapes from such custody or confinement; . . . or (5) Intentionally fails to return as instructed to lawful custody or lawful confinement or to any residential facility operated by the Georgia Department of Corrections after having been released on the condition that he or she will so return. . . .

---

[3] OCGA § 16-10-52 (a) (5); *Echols v. State*, 233 Ga. App. 578 (505 SE2d 55) (1998) (under OCGA § 16-10-52 (a) (5), not reporting back to a diversion center constitutes the felony offense of escape).

In interpreting statutes we are required to look diligently for the intention of the General Assembly as well as apply the ordinary signification to all words, except words of art or words connected with a particular trade or subject matter (which shall have the signification attached to them by experts in such trade or with reference to such subject matter).[4] "Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. In fact, where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden."[5] The text of the escape statute does not define "lawful custody or lawful confinement." We therefore look to the ordinary meaning of the words, given that they are not terms of art; and we look for the intention of the General Assembly.

In *Palmer v. State*,[6] the Supreme Court of Georgia looked to the escape statute to determine the meaning of the words "in the custody of the law" as provided in a statute proscribing sexual assault against persons in custody.[7] The Court determined that the term "custody" in the escape statute "presupposes actual imprisonment or detention."[8] The Court further employed the definition of custody as found in the American Heritage Dictionary: "2. the state of being kept or guarded; and 3. the state of being detained or held under guard. . . ."[9]

The American Heritage Dictionary[10] defines the word "confine" as: "1. To keep within bounds; restrict. 2. To shut within an enclosure; imprison. 3. To restrict in movement. . . ." And the word "confinement" is defined as: "1. a. The act of confining. b. The state of being confined."

In *Bond v. State*[11] we held that the defendant's underlying felony conviction was the authority for her "confinement in the work release program" and thus the defendant was properly sentenced for felony escape after she signed out of a facility for one day and did not return. And for purposes of deciding the terms and conditions of probation, while expressly rejecting the notion that placement in a detention or diversion center or in the defendant's own home constituted incarceration, we have recognized placement in a deten-

---

[4] OCGA § 1-3-1 (a), (b); *City of Roswell v. City of Atlanta*, 261 Ga. 657 (1) (410 SE2d 28) (1991).

[5] *Jackson v. State*, 309 Ga. App. 24, 26 (1) (a) (709 SE2d 44) (2011) (footnote omitted).

[6] 260 Ga. 330, 331 (393 SE2d 251) (1990).

[7] Id. at 331.

[8] Id.

[9] Id.; *Krauss v. State*, 263 Ga. App. 488, 489 (2) (588 SE2d 239) (2003).

[10] Second College Edition.

[11] 263 Ga. App. 620, 621-622 (588 SE2d 801) (2003).

tion or diversion center or in the defendant's own home as forms of "limited confinement."[12]

The General Assembly provided for the creation of programs of electronic pretrial release to, among other things, "[a]ssist[ ] sheriffs in alleviating jail overcrowding by creating alternative methods of pretrial release and monitoring and *home confinement*[.]"[13] Indeed, the General Assembly found that "a program of electronic pretrial release, monitoring, and *home confinement* incorporates modern technology to accomplish"[14] various purposes. Thus, the General Assembly explicitly recognized a defendant's home as a place where he or she could be kept within bounds or restricted in movement, for purposes of the electronic pretrial release program.

Here, it is undisputed that Brown was in a state of being restricted to or detained within his home, under the guard of an electronic monitor. The order placing Brown on house arrest and requiring him to wear a leg monitor provided that Brown was to serve a specified number of days in home confinement with electronic monitoring, was on "Total Lock-down," and was allowed to leave his home only to attend church. Brown violated these conditions by removing the monitor and leaving town. Applying the plain meaning to the terms "custody" and "confinement," and looking diligently for the intention of the General Assembly, we find that a defendant participating in an electronically-monitored house arrest program is in lawful custody or lawful confinement, as provided in OCGA § 16-10-52. Thus, the evidence was sufficient to authorize a rational trier of fact to find Brown guilty of escape beyond a reasonable doubt.[15]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED FEBRUARY 3, 2012.

*Kevin Armstrong*, for appellant.
*Gregory W. Edwards, District Attorney, Matthew Breedon, Assistant District Attorney*, for appellee.

---

[12] *Johnson v. State*, 283 Ga. App. 425, 427 (2) (641 SE2d 655) (2007); *McKinney v. State*, 240 Ga. App. 812, 815 (2) (525 SE2d 395) (1999); *Pierce v. State*, 278 Ga. App. 162 (628 SE2d 235) (2006) (recognizing, for purposes of statute mandating that a defendant serve not less than seventy-two hours of incarceration upon a second DUI conviction within a five-year period, that house arrest is a form of limited confinement); *Royal Indem. Co. v. Agnew*, 66 Ga. App. 377, 379 (18 SE2d 57) (1941) (any portion of a body of laws may well be invoked to ascertain the meaning of words and phrases used in another part).

[13] Ga. L. 2009, p. 691, § 1 (emphasis supplied).

[14] Id. (emphasis supplied).

[15] See *Placanica*, supra.