[S. F. No. 10841. In Bank.—December 18, 1923.]

HERB H. FRANCISCO et al., Petitioners, v. INDUS-TRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] Workmen's Compensation Act—Filing of Application—Statute of Limitations — Subsection (c) of Section 11 of Act — Evidence.—Subsection (c) of section 11 of the Workmen's Compensation Act (Stats. 1917, pp. 831–841), which provides in effect that the requirement of filing an injured employee's application for an award within six months from the date of the injury "shall not apply to an employee who is totally disabled and bedridden as a result of his injuries, during the continuance of such condition or until the expiration of six months thereafter," is not available to an injured employee in a proceeding for compensation who was able within a week or so after the date of his injuries to travel from his home to another place, where on occasions he rode in taxicabs between various places but otherwise walked about with the aid of crutch or cane, later returning to his home, going from thence at intervals to be treated by local physicians.

[2] Id.—Person Injured an Indian—Status of—Exemptions.—An injured employee applying for an award before the Industrial Accident Commission was not, by reason of the fact that he was an Indian, or that he lived upon a reservation, entitled to any other privileges or exemptions than those which the Workmen's Compensation Act, the aid of which he was invoking, afforded to

1. Necessity for notice of injury within the meaning of the Workmen's Compensation Acts, notes, Ann. Cas. 1917D, 867, 881, 883, 886; Ann. Cas. 1918C, 1042; L. R. A. 1916A, 83, 244; L. R. A. 1917D, 135; L. R. A. 1918E, 556.

all other employees who might be seeking similar awards for injuries arising out of and in the course of their employment, where it was shown that he belonged to that identical type of Indian the status of which was defined in the case of *Anderson* v. *Mathews*, 174 Cal. 537.

[3] ID.—EXEMPTIONS—MEANING OF WORD "INCOMPETENT" USED IN SUBSECTION (D) OF SECTION 11 OF ACT—CONSTRUCTION.—The term "incompetent" as employed in subsection (d) of section 11 of the Workmen's Compensation Act, which subsection extends the time for filing an application for an award where the injured employee is "incompetent," must, under well-recognized rules of construction, be given the same scope and meaning as that which has been accorded to it in our statutes which deal with the status of persons generally, and hence the definition of said term which is to be found in the Code of Civil Procedure should be applied to it as embodied in the Workmen's Compensation Act, in the absence of anything to indicate that any other or different meaning was to be given to it as contained therein.

[4] ID.—INCOMPETENCY OF EMPLOYEE—EVIDENCE.—The applicant, who is an Indian, in this proceeding before the Industrial Accident Commission for compensation for injuries received as an employee has not been shown by the testimony taken before the Commission to be an incompetent person within any of the classifications and definitions of section 1767 of the Code of Civil Procedure, which defines an incompetent as "any person who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons."

PROCEEDING on Certiorari to annul an order of the Industrial Accident Commission awarding compensation. Order annulled.

The facts are stated in the opinion of the court.

Redman & Alexander for Petitioners.

Warren H. Pillsbury for Respondents.

RICHARDS, J., *pro tem.*—The petitioners herein apply for a writ of review whereby they seek to have reviewed and annulled an award of the Industrial Accident Commission to one John Mack, who was injured while in the employ of the petitioner Herb H. Francisco while the petitioner Ocean Accident and Guarantee Corporation was the latter's insurance carrier. The sole question presented for our con-

sideration upon this application is as to whether John Mack, the applicant for relief before the Commission, had filed his application for an award too late to give the Commission jurisdiction to consider the same or to grant the relief prayed for therein.

John Mack received the injuries for which he sought the award in question, on April 13, 1921, while in the occupation of a teamster in the employ of the petitioner Francisco. He filed his application for said award, based upon his aforesaid injuries, with the Industrial Accident Commission on November 28, 1921, claiming total disability and asking for an award under the provisions of section 9 of the Workmen's Compensation Act, which in subsections (a) and (b) thereof provide for compensation in cases of total and of temporary disability. In subdivision (1) of section 11 of said act (Stats. 1917, pp. 831-841) it is provided that "proceedings for the collection of the benefit provided by subdivision (a) of section 9 or for the collection of the disability payment provided for by subsection (b) of said section 9, must be commenced within six months from the date of the injury, except as otherwise provided in this act." There are two later provisions in said act which contain the exceptions to the operation of the foregoing limitation as to the time within which the injured employee's application for an award must be filed. The first of these is embraced in the provisions of subsection (c) of said section 11 of said act, which reads as follows: "Provided further that the provisions of this section shall not apply to an employee who is totally disabled and bedridden as a result of his injuries, during the continuance of such condition or until the expiration of six months thereafter." The second of said exceptions is to be found in the provisions of said subsection (d) of said section 11 of said act, which reads in part as follows: "If an injured employee shall be under 21 years of age or incompetent at any time when any right or privilege accrues to such person under the provisions of this act, a general guardian, appointed by the court, or a guardian *ad litem* or trustee appointed by the commission or a commissioner may, on behalf of any such person, claim and exercise any such right or privilege with the same force and effect as if no such disability existed; and no limitation of time provided by this act shall

run against any such person under twenty-one years of age or incompetent unless and until such guardian or trustee is appointed. The commission shall have power to determine the fact of the minority or incompetency of any injured employee and may appoint a trustee to receive and disburse compensation payments for the benefit of such minor or incompetent and his family." [1] Under the first of these foregoing exceptions we are satisfied that the evidence taken before the Commission did not disclose any such "totally disabled and bedridden" condition on the part of an applicant for an award as would entitle him to the benefit of said exception. Upon his own evidence he was neither totally disabled nor bedridden for any considerable period after receiving his said injuries, since he was able within a week or so after the date of his injuries to travel to Los Angeles from his home in the vicinity of Riverside at the instance of his employer in search of medical treatment for his injuries, where he remained several days, during which he went about, with some difficulty, it is true, entering the Golden Gate Hospital, where he remained under treatment three or four days, and also visiting the offices of the physicians of the insurance carrier in an effort to get treatment and relief. During a portion of the time he was in Los Angeles he had a room, from which he went in taxicabs to the hospital or to the doctor's offices, but otherwise walking about with the aid of a crutch or cane. When his money gave out he returned to his home at Mecca, going from thence at intervals to be treated by local physicians. During this period he doubtless suffered much pain from the injury to his leg, and when in the hospital or at home lay down a good deal, but it cannot be reasonably claimed upon the evidence before the Commission that the applicant was at any time "totally disabled and bedridden" during the months of April or May following the date of his injuries; nor did the Commission in deciding to make the award place its ruling that the applicant was not barred by the limitation as to the time within which his application must have been filed upon the ground of his being "totally disabled and bedridden" during said period of the time, but rather upon the ground covered, if at all, by the other exception. The ruling of the Commission in that regard was that the "applicant was,

at the time of said injuries and at all times herein mentioned an unallotted tribal Indian, incapable of handling his own affairs, and the statute of limitations is not a bar to this proceeding." It is this ruling which presents the only real question before us upon this proceeding. The undisputed evidence was that John Mack was and is an Indian; that he was of the age of about forty-six years at the time of his injury; that he was living at and for some time prior to the date of his said injury upon the so-called "Martinez" reservation, which was in the vicinity of Riverside, and which consisted of a large body of land which had been set apart and was being maintained as a reservation by the federal government for the use and benefit of the Indians who inhabited that region, the lands of said reservation being owned by the United States government but being occupied in severalty by the Indian families upon the reservation under the assurance that such lands would sooner or later be allotted to them in severalty. In the decision of the Commission herein the applicant for an award is referred to as "an unallotted tribal Indian." The evidence, however, discloses that he is not a member of any known tribe of Indians and that certainly he is not a member of any of those well-known Indian tribes who have at times in our national history come into treaty relations with the United States government, in which the rights and status of their members have been defined. On the contrary, the undisputed evidence before the Commission showed that John Mack belonged to that identical type of Indian the status of which was defined by this court in the case of *Anderson* v. *Mathews,* 174 Cal. 537 [163 Pac. 902], wherein it was held that an Indian, native of California, not . a member of any known or recognized tribe having communal laws, customs, or institutions of its own and having been treated by the United States government as a dis‑ tinct political community, but who, on the contrary, had conformed in his ways of living to the habitudes of American citizens or inhabitants of the white race; who had married under state laws, lived with his wife and offspring after the manner of American families, sought and found employment in the vocations usual to people of his class and locality, regardless of race, and who had generally been accorded the benefits and been subject to the burdens of

local and state laws, was to be treated as other persons are treated in relation to the rights, duties, exemptions, and privileges under such laws. It was also held in that case that the mere fact that the federal government had established schools or purchased lands for ultimate allotment for Indians of this type, or had at times furnished them with food or clothing according to their needs, did not constitute such a recognition of their status as members of a distinct tribe or class which would exempt them from the ordinary operation of state institutions or statutes so as to bring them within the doctrine of *Elk* v. *Wilkins,* 112 U. S. 94 [28 L. Ed. 643, 5 Sup. Ct. Rep. 41, see, also, Rose's U. S. Notes], as to their rights and duties of citizenship. [2] In harmony with the views expressed in the foregoing opinion John Mack, the applicant for an award before the Industrial Accident Commission was not, by reason of the fact that he was an Indian, or that he lived upon the Martinez reservation, entitled to any other privileges or exemptions than those which the statute, the aid of which he was invoking, afforded to all other employees who might be seeking similar awards for injuries arising out of and in the course of their employment.

As we have seen, the Workmen's Compensation Act requires that injured employees seeking an award under its terms for either total or temporary disability must commence proceedings before the Industrial Accident Commission for the collection of such award within six months from the date of the injury, unless such injured employee was either totally disabled and bedridden or was "under twenty-one years of age or incompetent at any time when any right or privilege accrues to such person under the provisions of this act." John Mack was not, as we have above concluded, within the first of these exceptions. He was also not under twenty-one years of age at the date of his injuries. His only claim to the benefit of these exceptions as to the time within which he must have initiated his proceeding for relief under said act must be founded upon the contention that he was "incompetent" at and after the date of his said injuries, within the meaning of that term as used in said act. [3] The term "incompetent" as employed in subsection (d) of section 11 of the Workmen's Compensation Act must, under well-recognized

rules of construction, be given the same scope and meaning as that which has been accorded to it in our statutes which deal with the status of persons generally, and hence the definition of said term which is to be found in the Code of Civil Procedure should be applied to it as embodied in the Workmen's Compensation Act, in the absence of anything to indicate that any other or different meaning was to be given to it as contained therein. No such intendment appears upon the face of said act, but, on the contrary, the context of the foregoing subsection of said act above fully set forth shows that the lawmakers in framing said act had distinctly in mind the provisions of article II of chapter XIV, part III of the Code of Civil Procedure, dealing with the subject of guardians of insane and incompetent persons. Section 1767 of said code defines the phrase "incompetent" as follows:

"The phrase 'incompetent,' 'mentally incompetent,' and 'incapable,' as used in this chapter, shall be construed to mean any person who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons."

Looking to the language of the foregoing section of the code it would appear plain that the applicant, John Mack, is not to be classed as incompetent merely because he is an Indian, for the reason that Indians as such are not included in the classification of incompetent persons which the section enumerates. Neither, as we have seen, is he to be held to be incompetent merely because he is an Indian of the type disclosed by the proceedings before the Commission and defined by the foregoing decision in the case of *Anderson* v. *Mathews, supra.* [4] It is equally plain to us that John Mack has not been shown by the testimony taken before the Commission to be an incompetent person within any of the classifications and definitions of the foregoing section of the Code of Civil Procedure. The undisputed evidence in the case discloses that John Mack was, at the time of his injuries, of the age of forty-six years; that prior thereto he had been physically in a healthy condition and suffering from no disease; that as to his mental

192 Cal.—41

equipment he had received the advantages of education much beyond those open to and accepted by the ordinary individual of his race; that he had attended various schools during a period of thirteen years, among which was the Haskell Institute, at Lawrence, Kansas, where he remained three years; also a Catholic school at Banning, where he spent from three to four years, and an Indian school at Phoenix, where he attended for three years. It is true, as the testimony discloses, that he did not advance as rapidly as youths of the white race would do, and that on the whole his thirteen years of schooling took him about as far up the ladder of education as pupils in the seventh grade of grammar schools ascend. Nevertheless, he received, during these years of school attendance, training in several trades. He became a good carpenter, a fair farmer, a shoemaker, and a first-class teamster. In fact, he stood at the head of his class in this latter vocation, testifying somewhat proudly that he received the highest wages paid to teamsters by the various persons by whom he was employed in that capacity, including Francisco, who was his employer at the time of his injuries. He speaks the English language fluently and correctly in the main, as the record of his testimony shows. He also speaks Spanish, though not so well as English, and is fluent in his native Indian language. At the time of his injuries he was earning thirty-two dollars a week, the highest wages paid teamsters in that region. While it is true that John Mack displayed in his character and conduct the simple, trustful, and even childlike qualities typical of the California Indian, it is impossible, in the light of the foregoing undisputed evidence, to arrive at the conclusion that he was possessed of any such weakness of mind as to be unable, unassisted, to properly manage and take care of himself or his property so as to come within the designation of an incompetent person within the intent and meaning of the foregoing section of the Code of Civil Procedure. The decision of the Commission was evidently based upon a misconception of his status because of the fact that he was an Indian, living upon unallotted lands in a federal reservation. As such he had become the employee of an employer, and being injured in that capacity, came within the beneficent provisions of the Workmen's Compensation Act of this state, and has chosen to make application for relief within

its terms; but having thus sought its benefits, he must be held also to an assumption of its burdens, one of which was the requirement that he should file his application for relief within six months from the date of his injuries. Not having brought himself within the designated exceptions to the operation of this limitation he must be held to be subject to it, and the lapse of seven and one-half months between the date of his injuries and the filing of his application for relief must be held to have deprived the Commission of jurisdiction to entertain his application or grant him an award. The order is annulled.

Lawlor, J., Lennon, J., Myers, J., Seawell, J., Kerrigan, J., and Wilbur, C. J., concurred.