[Civ. No. 5315. Second Appellate District, Division One.—May 17, 1928.]

WESLEY W. PETERS, an Infant, by His Guardian, etc., Respondent, v. PAUMA SCHOOL DISTRICT OF SAN DIEGO COUNTY et al., Appellants.

Turrentine & Wright for Appellants.

Samuel W. McNabb, United States District Attorney, and Ames Peterson, Assistant United States District Attorney, *Amici Curiae.*

WOOD (W. J.), J., *pro tem.*—Defendants appeal upon the judgment-roll, claiming that the findings do not support the conclusions reached by the trial court. Wesley W

Peters, a minor Indian child, filed in the superior court a petition for a writ of *mandamus* by which he seeks to compel the defendant School District and the teacher thereof to admit him as a pupil. Among the findings of the trial court are the following:

"That Max Peters, and Wesley W. Peters, are Mission Indians, and live upon the Pauma Grant, originally a large Spanish Grant patented to the Mexican Government in 1844, to Jose Sorreno. That the patent excepted from the Grant, planting ground for the Indians' use and benefit, and said patent was confirmed in 1879, by U. S. Patent, which also excepted planting grounds for the use and benefit of said Indians.

"That in 1899, the Pauma Grant had passed to Francis Mora, who entered into an agreement with the U. S. Government in the year 1889, defining boundaries of the Indian lands excepted from both patents above referred to, and title to this land was then quit claimed to the U. S. Government, for the use and benefit of said Mission Indians.

"That Wesley W. Peters, petitioner in this matter, and Max Peters, his father and Guardian *ad Litem,* were both born on land excepted and reserved for the use of the Mission Indians, and lived thereon at the commencement of this action.

"That the Indians living and residing on this excepted and reserved land do not live in tribal relations; that the United States Government has never made treaties of any kind with these Indians, and that said Indians live in the manner of other American citizens in the vicinity.

"That the lands upon which these Indians live is not subject to taxation, and that said lands at all times since 1844 have been and now are vested in the U. S. Government for the use and benefit of the Mission Indians, of which Wesley W. Peters and Max Peters are a part.

"That said lands upon which said Max Peters and Wesley W. Peters live is within the exterior boundaries of the Pauma School District of San Diego County, California."

The court concluded: "That Wesley W. Peters, petitioner, and his Guardian *ad Litem,* Max Peters, are not tribal Indians, and are both citizens of the United States and of the State of California.

"That the property upon which Wesley W. Peters and Max Peters reside is not a part of an Indian Reservation, and that Wesley W. Peters is a resident of the Pauma School District of San Diego County, California, and entitled to be admitted to the duly established school of Pauma School District, San Diego County, California."

Defendants base their appeal upon the sole proposition, as claimed, that the findings disclose that petitioner is a resident of an Indian reservation. They state in their brief: "If the Court can find, as a conclusion of law, that this is not a reservation, then of course this appeal must fail, for if petitioner is not a resident of an Indian Reservation, admittedly he is entitled to be granted admission to the Pauma School under the authority of *Piper* v. *Big Pine School District*, 193 Cal. 664 [226 Pac. 926]." A brief has been filed as *amicus curiae* by the United States attorney for the southern district of California, in which it is contended that petitioner is not a resident of an Indian reservation, and that regardless of the determination of this question he is entitled to demand admission to the school.

The facts set forth in the findings do not establish that petitioner resides upon an Indian reservation. ▮ The definition of an Indian reservation is given in the *Matter of Forty-three Cases Cognac Brandy*, 14 Fed. 539, where the court says: "An Indian reservation is a part of the public domain set apart by proper authority for the use and occupation of a tribe or tribes of Indians. It may be set apart by an act of congress, by treaty, or by executive order; I do not think an Indian reservation can be established by custom or prescription. The fact that a particular tribe or band of Indians have for a long time occupied a particular tract of country does not constitute such tract an Indian reservation." The foregoing is set forth in 31 Corpus Juris 499 as the proper definition of an Indian reservation. The author of that work has placed a footnote under the general definition in this language: "Another definition. An Indian reservation may be defined to be a certain limited portion of our national domain, assigned by the federal government to a tribe or tribes of Indians, or some part or parts of the same, to be held by them according to the terms of the assignment. *United States* v. *Certain Property*, 1 Ariz. 31 [25 Pac. 517]." Counsel for petitioner have not

furnished us with any authority showing these definitions are not correct.

Applying the facts as found by the trial court to the foregoing definitions, it is apparent that elements are lacking which are necessary to constitute the land on which plaintiff is residing an Indian reservation. The findings expressly negative any inference that the land is occupied by any tribe or tribes of Indians, or that any treaty was ever made between the Indians and the United States. The findings show only that certain Indians are living on land which, under the terms of the Mexican grant, was set apart to them for planting ground; that in 1889 the government received title to the land from one Mora and holds that title for the use and benefit of the Indians, who are now occupying it in the same manner as other citizens.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.