[Civ. No. 2821.   Fourth Dist.   Dec. 5, 1942.]

WOOD F. WORCESTER, as Guardian, etc., Petitioner, v. BOARD OF SUPERVISORS OF THE COUNTY OF SAN DIEGO et al., Respondents.

Dempster McKee for Petitioner.

Earl Warren, Attorney General, Bayard Rhone, Deputy Attorney General, Thomas Whelan, District Attorney, San Diego and Duane J. Carnes, Deputy District Attorney, for Respondents.

BARNARD, P. J.—This is a proceeding in mandamus by which the petitioner seeks to compel the Board of Supervisors of the County of San Diego, the Department of Social Welfare of the State, and the Social Welfare Board of the State to give and render financial aid to one Henrietta Sinohui, a minor, and to pay such aid commencing as of the first day of November, 1940.

The petition alleges that the petitioner is the Probation Officer of San Diego County. That the above-named minor is and was eligible for aid under the "Aid to Needy Children Act" in that her mother is dead, her father is in the penitentiary, she is under the age of 18 years, she is a resident of San Diego County, and she has no income. That she is and was qualified for said aid under sections 1500 to 1526 of the Welfare and Institutions Code. That she received such aid from April 1, 1938 to November 1, 1940. That on December 9, 1940, a petition was filed in the Juvenile Court of San Diego County seeking to make said minor a ward thereof, it being alleged therein that she has no parent or guardian exercising proper parental control; that her aunt, Angie Garcia, with whom she lives, has no visible means of support and is not a fit person to rear said minor; and that by reason of the reputation of Angie Garcia for dissolute living and her association with persons of ill repute the Department of Public Welfare has withdrawn financial aid for

this minor on the basis of depravity of the aunt. That after a hearing on said petition and on December 20, 1940, the said juvenile court made its order finding that said minor was of the age of 11 years and that the facts stated in the petition are true, adjudging said minor to be a ward of the juvenile court, ordering that she be committed to the custody and control of the probation officer and that she be placed in the home of Angie Garcia, and further ordering the county treasurer to pay $20 per month for the maintenance of said ward in said home. That on October 31, 1940, the board of supervisors of said county discontinued "Aid to Needy Children" for said minor. That on January 10, 1941, an appeal was taken by this petitioner to the State Department of Social Welfare from said decision of the board of supervisors. That on April 25, 1941, the "Board of Social Welfare" determined that the home in which this minor was residing did not meet the standards established by said "Social Welfare Board." That for said reasons said aid was denied and the action of the board of supervisors was sustained. That pursuant to the provisions of section 114 and 1511 of the Welfare and Institutions Code said Social Welfare Board had previously made and adopted rules and regulations which included " 'Adequate Care' implies a satisfactory standard of living which includes; . . . C. For the child receiving foster care, a boarding home meeting requirements for a licensed home or equivalent standard if living with relatives." That said board of supervisors and said Social Welfare Board each found that the requirements of eligibility and the standard of care required by law was not met under the conditions in the home where this minor was residing. That for said reason said aid was discontinued. That the board of supervisors and the Social Welfare Board have each acted arbitrarily and illegally in thus refusing such aid. That by thus refusing such aid these boards have illegally attempted to force the removal of this minor from the home of her aunt notwithstanding the fact that the juvenile court has refused to order the removal of said child from said home.

█ The petitioner's contention is that since the juvenile court has ordered this minor placed in the aunt's home that order is binding upon the respondent boards, that these boards no longer have authority under the law to pass upon the question of the suitability of the aunt's home, and that in

refusing to continue the aid formerly given to this minor the respondent boards have acted arbitrarily and have illegally attempted to force the removal of the child from the home of her aunt, and have thus attempted to nullify the court's order. As we view the matter, no conflict appears between the authority of the juvenile court and that of the respondent boards and nothing which is here presented indicates any attempt on the part of the respondent boards to overrule or nullify the order of that court. The Juvenile Court Law is now found in chapter 2 of part 1 of division 2 of the Welfare and Institutions Code. Section 860 thereof provides that when it is necessary to make provision for the support and maintenance of a ward of the juvenile court that court may in its order direct that the whole of such expense, up to a certain amount, be paid from the county treasury. This was done in this case and, so far as here appears, no one has refused to comply with that order and no one has attacked it or proposes to overrule it or upset it in any manner.

An entirely separate and distinct system for caring for needy children, without regard to whether or not they are wards of the juvenile court, is provided in another part of the Welfare and Institutions Code and is found in chapter 1 of part 2 of division 2 of that code, running from section 1500 to section 1580 thereof. Section 1510 provides for an appropriation from the state treasury to be used in connection with the support of needy children. Section 1511, as amended, provides that the expense of supporting needy children qualifying for aid under the provisions of that chapter shall be paid two-thirds by the state and one-third by the county. Section 1550 provides that applications for such aid shall be investigated by the county and the county shall approve or deny such applications. Section 1551 provides for an appeal to and a hearing by the State Social Welfare Board. Section 114 provides that in administering any funds appropriated or made available to the department the department shall "(b) Establish rules and regulations . . . defining and controlling the conditions under which State aid may be granted or refused." It here appears that such rules and regulations were adopted, that this form of aid, including state aid, has been refused to this minor after an investigation by the board of supervisors, and that the action of that board has been sustained on appeal by the Social Welfare Board, it having been found by both of these boards that the

home in which this minor was residing did not meet the requirements of the rules and regulations which had been adopted. While the juvenile court has apparently found the home in question sufficient for its purpose, the sole question here presented is whether the respondent boards may be compelled to continue to furnish to this minor this particular form of aid, including state aid, and "to pay such aid commencing as of the first day of November, 1940."

It may be first observed that the time at which any possible payment should be commenced is a matter for determination by the respondent boards. (*Bila* v. *Young,* 20 Cal. 2d 865 [129 P.2d 364].) While the juvenile court had authority over the custody of this minor, including the power to order payment for her support out of the county treasury, it had nothing to do with that form of aid for needy children which is here involved, which includes state aid, the administration of which is governed and controlled by sections of the Welfare and Institutions Code, other than those providing for and governing the operations of the juvenile court. On the other hand, the respondents were charged with the duty of administering this different form of aid provided for by these other statutes. Assuming that in all other particulars this minor was eligible for this form of state aid, a fact which does not clearly appear, she was not eligible in any event when the conditions imposed by the regulations adopted pursuant to such statutes were not met, and the question whether these conditions were met was one of fact for the respondents. Nothing here appears to show, as a matter of law, that the respondents have decided those questions of fact either incorrectly or upon insufficient evidence. It follows that the petitioner is not entitled to the relief here prayed for.

In so holding, we are not to be understood as indicating that an order of the juvenile court is or may be in any way subject to control by or through any action on the part of the Social Welfare Board of the State. No such question is here involved.

The application for a peremptory writ is denied and the alternative writ is discharged.

Marks, J., and Griffin, J., concurred.